STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MICHAEL J. MC GIVERN, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 20, 1979—Decided March 30, 1979.

Before Judges Lynch, Crane and Horn.

*Mr. Richard S. Rebeck,* Prosecutor, attorney for appellant (*Ms. Lynne M. O'Carroll,* Assistant Prosecutor, of counsel and on the brief).

*Messrs. Ball, Hayden, Kiernan & Livingston,* and *Messrs. Cappello & Prendergast* (counsel of State of Virginia), attorneys for respondent (*Mr. Stuart S. Ball* of New Jersey counsel and *Mr. Paul A. Cappello* of Virginia counsel, on the brief).

The opinion of the court was delivered by

Horn, J. A. D. We granted the State's application for leave to appeal from an order of the trial court which, following an evidential hearing, suppressed evidence. *R.* 3:5-7. Pursuant to *R.* 2:11-2 we elected to decide the merits of the appeal on the papers submitted by the respective parties with respect to the motion and such additional briefs as the parties desired to file. We have received no additional briefs or other communication from the parties, and the time within which the supplemental briefs could be filed has now elapsed. Accordingly, the case is ripe for our determination.

The evidence of the State at the hearing, although controverted by defendant, tended to show that on January 22, 1978 State Trooper Steven Mihalow, while patrolling the New Jersey Turnpike in Edison Township, Middlesex County, observed a northbound motor vehicle weaving between the shoulder and the right lane. The vehicle was a 1978 Ford bearing New York registration license plates. He directed the driver (defendant) of the vehicle to pull over onto the right shoulder and then requested him to produce his driver's license and registration. Defendant exhibited

his driver's license and a rental agreement which was nine days overdue.

In response to questions, defendant told the trooper that he had not been drinking and was enroute from Maryland to New York. We quote a portion of the trooper's testimony at the hearing as to the trooper's inquiry of defendant concerning whether the latter had any luggage in the car:

A He stated he did. He had a briefcase with a CB radio and a gym bag with clothes in it.
Q Then what happened?
A At which point the subject exited the vehicle, went around and opened up the trunk.
Q Had you asked him to do that?
A No.
Q And when he opened up the trunk, where were you?
A I followed behind him.
Q And what, if anything, did you notice when he opened up the trunk?
A ·When he opened up the trunk he pointed out to his bag of clothes. He opened up the briefcase to point out the CB radio and he had another box in the trunk.

The trooper noticed "a strong odor of marijuana coming out of the trunk" and concluded from the appearance of a box in the trunk that the box contained marijuana.[1] He then told defendant that he believed the box contained marijuana. Defendant replied: "It's not my pot." The trooper then arrested defendant. When opened it was disclosed that about 38 pounds of marijuana was contained in the box.

In a letter containing his conclusions, the trial judge, relying on State v. Johnson, 68 N. J. 349 (1975), found the trooper's "version to be credible." However, he concluded that since the State failed to prove by clear and positive

---

[1] The trooper had testified as to his expertise in narcotics investigations by reason of special training.· This included the appearance and odor of various narcotic drugs. From his experience as a general duty road trooper for four years, he also learned about "the packaging of marijuana."

evidence that the "consent was knowingly, intelligently, voluntarily and unequivocally given to search the automobile trunk," the "search" was made in violation of defendant's rights. Therefore he directed that the evidence taken from the trunk be suppressed. We disagree and, accordingly, reverse.

We believe that the facts in the instant case are clearly distinguishable from those of *State v. Johnson, supra.* In *Johnson* the police entered defendant's apartment, where contraband was found, ostensibly after consent to do so was given by defendant's fiancee, who occupied it. The court there held, primarily on the holding of *Schneckloth v. Bustamonte,* 412 *U. S.* 218, 93 *S. Ct.* 2041, 36 *L. Ed.* 2d 854 (1973), that:

> * * * [T]he validity of a consent to a search, even in a noncustodial situation, must be measured in terms of waiver; *i. e.,* where the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent. [68 *N. J.* at 353–354]

There the police requested entrance into the apartment. In the case before us the trooper merely asked if defendant had any luggage in the car. This question is not tantamount to a request for the opening of the trunk. *Cf. State v. Anglada,* 144 *N. J. Super.* 358 (App. Div. 1976).

The issue of a knowing consent, or for that matter any consent, is not involved in the case at bar. If a person chooses to disclose contraband or evidence thereof as to which he ordinarily would be protected by virtue of his constitutional rights, without that course being initiated by the police, he does so at his peril. Here defendant failed to respond to the trooper's question as to whether he had luggage in the vehicle. Instead, he, for some reason known only to himself, chose to open the trunk. Once that occurred, the trooper was free to act on the basis of what his senses revealed. *Cf. State v. Mason,* 164 *N. J. Super.* 1 (App. Div. 1979).

To hold otherwise would give license to persons to rush to display evidence of crime and thereafter prevent the use thereof for the purposes of prosecution. Before there can be a question of consent, there must be an express or implied request to see or enter. No such request can be spelled out of the facts found by the trial judge in the instant case.

Reversed and remanded for further proceedings consistent herewith. We do not retain jurisdiction.